**MECURIO, Appellee,**

**v.**

**THERM–O–DISC, INC., Appellant.**

[Cite as *Mecurio v. Therm–O–Disc, Inc.* (1993), 92 Ohio App.3d 131.]

Court of Appeals of Ohio,
Richland County.

No. 92–CA–64.

Decided July 21, 1993.

132

*Mowery & Youell* and *David S. Kessler*, for appellee.

*Buckingham, Doolittle & Burroughs* and *John W. Ferron*, for appellant.

---

READER, Judge.

Appellant Therm–O–Disc, Inc. appeals a judgment of the Richland County Common Pleas Court on a jury verdict awarding appellee Phyllis J. Mecurio $95,365.13 on a claim of breach of implied contract. Appellant assigns twenty-five errors, attached and incorporated herein as an Appendix.

For purposes of this opinion, we condense these twenty-five errors into six issues:

1. Did the trial court err in overruling appellant's motion for summary judgment on the implied contract claim?

2. Did the trial court err in overruling appellant's motion for directed verdict?

3. Did the trial court err in overruling appellant's motion for judgment notwithstanding the verdict ("JNOV")?

4. Is the judgment against the manifest weight of the evidence?

5. Did the court err in failing to enter judgment for appellant because appellee failed to mitigate her damages?

6. Did the court err in awarding front-pay damages?

Therm–O–Disc manufactures and assembles thermostatic controls, switches, and related devices. Therm–O–Disc is headquartered in Mansfield, Ohio. Appellee Mecurio began working at Therm–O–Disc in 1959. She quit several years later to start a family. She was rehired by the company in 1968 as an assembly-line worker. In 1986, she was promoted to assistant supervisor.

In late May 1990, Therm–O–Disc conducted its annual inventory. Mecurio and one of the employees under her supervision removed small parts from the plant to avoid counting them in the inventory. Mecurio claimed that she removed the parts at the direction of a supervisor. There was evidence that during the term of her employment, a practice existed at Therm–O–Disc whereby certain parts were hidden during inventory to avoid counting the parts. Employees hid these parts in desk drawers, in the plant basement, or in their purses.

During the 1990 inventory, Merv Marshall, appellee's supervisor, asked her if parts had been taken off the line during inventory. She denied knowledge that another employee took the parts, but did confront the employee about the parts. Because the employee had the parts at home, appellee and the employee left the plant to retrieve the parts. Neither one clocked out of the plant. Appellee claimed that she believed they were to retrieve the parts on company time, in accordance with Marshall's instruction to her to get the parts back into the plant. She did not return the parts which she herself had taken.

On June 5, 1990, appellee was discharged by management for removing parts from inventory and instructing an employee to do so, failing to clock out and instructing an employee to do so, and falsifying inventory. When questioned about the parts she had taken, she told management that she did not have the parts, although they were in her possession at the time.

Appellee brought the instant action claiming that her termination was in violation of promissory estoppel, breach of an implied contract, gender discrimination, and wage discrimination. The jury returned a verdict for appellee on the implied contract claim only, awarding damages of $95,365.13 (back pay of $63,366.60; front pay of $31,998.53).

Pursuant to interrogatories, the jury found that by conduct or spoken words, the parties mutually agreed that Therm–O–Disc could not discharge appellee except in accordance with its corrective action policy, which was not followed in this instance.

Appellant's motion for judgment notwithstanding the verdict was overruled. The court entered judgment for appellee in accordance with the jury's verdict.

*Summary Judgment—Implied Contract*

Appellant argues that the court erred in overruling its motion for summary judgment on the implied contract claim.

Summary judgment shall be rendered if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Summary judgment shall not be entered unless it appears from the evidence or stipulations that reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. *Id.* In reviewing summary judgment, we stand in the shoes of the trial court, reviewing the summary judgment on the same standard and evidence. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

Appellant first argues that there was no evidence from which reasonable minds could conclude that appellee was not an employee at will, and therefore she could be discharged without a reason. Appellant argues that the alleged implied contract does not alter the at-will employment because appellee made no promise of employment for a specific duration.

For her implied contract claim, appellee relies on appellant's corrective action policy, arguing that the policy created an implied contract that she could only be discharged in accordance with the terms of the policy.

The existence of a disciplinary procedure does not in and of itself alter the employment-at-will relationship. *Peters v. Mansfield Screw Mach. Prod. Co.* (1991), 73 Ohio App.3d 197, 596 N.E.2d 1071. However, in certain circumstances, a cause of action for breach of an implied contract may lie where the company does not comply with its disciplinary procedure before discharge. See, *e.g.,* *Hamann v. Timken Mercy* (Sept. 14, 1987), Stark App. No. 7114, unreported, 1987 WL 17635; *Jones v. Alliance City Hosp.* (Jan. 4, 1988), Stark App. No. 7286, unreported, 1988 WL 2423.

The corrective action policy listed a series of rules, violations of which could result in punishment, up to and including discharge. These rules included punishment for failure to clock out and for falsifying reports. The policy specified major work rule violations, including falsifying company records and theft. The policy specified that no supervisor could discharge an employee on the spot for a major work rule violation.

The policy provided a four-step corrective action procedure. The first step was a verbal warning between the supervisor and employee, which the supervisor should document. The second step was a first written warning, for which the supervisor must complete a form; discuss the warning with a representative of the industrial relations department, who would give final approval; and discuss the warning with the employee. The third step was a final written warning, for which the supervisor must again complete the form, submit it for approval to industrial relations, and review the warning with the employee.

The fourth step was discharge of the employee. To discharge an employee, the supervisor must complete a recommendation for discharge form. The supervisor and the manager of industrial relations meet to review the circumstances leading to the recommendation for discharge. A meeting would be held between the employee, the supervisor, and a representative of industrial relations. If new facts were presented that could mitigate the discharge decision, action would be postponed until investigation.

The policy provided that any proposed deviations from the policy "will be reviewed in advance with final approval by the vice-president, industrial relations."

There was evidence before the court on summary judgment that the policy applied to appellee. There was evidence that appellee was called into a meeting and fired, without compliance with the disciplinary procedure. There was evidence that when appellee asked about the procedure, she was told that it did not apply to her. There was evidence that the vice-president was not aware of deviation from the procedure prior to discharge. There was evidence that supervisors were bound to follow the corrective action procedure before termination.

There was evidence that as an assistant supervisor, appellee told employees that they did not need a union because of the existence of the corrective action policy. Further, a manual given to appellee titled, "The Communicative Supervisor," specified that one reason employees seek unions is because of good disciplinary procedures. The manual listed strategies for maintaining a union-free environment, and listed answers which could be provided to questions of employees concerning what benefits a union could provide to them.

■ From the plain terms of the policy, and the evidence before the court on summary judgment, reasonable minds could conclude that an implied contract was created whereby the company promised that employees would only be discharged in accordance with the policy, in order to give the employees a sense of security to discourage unionization.

■ Appellant also argues that there was no evidence that the company consented to be bound by the policy. Given the mandatory terms of the policy, phrased as the "supervisor *will*," and the provision by which deviation from the policy must have prior approval of the vice-president of industrial relations, reasonable minds could conclude that the company intended to be bound by the terms of the policy in order to avoid establishment of a union.

■ Appellant next argues that the disclaimer in the employee handbook, which preserved the employment-at-will relationship, serves to defeat any claim of implied contract. This disclaimer appeared only in the handbook, not in the corrective action policy. These are two separate documents, and therefore the disclaimer was not effective to limit any rights established solely by the corrective action policy.

Appellant also argues that the corrective action policy preserved the right to terminate an employee for any rule violation. While the company did reserve the right to discharge, it did not reserve the right to discharge an employee without complying with the disciplinary procedure, absent prior approval. Contrast

*Duncan v. Bellemar Parts Industries, Inc.* (Sept. 12, 1991), Union App. No. 14–91–12, unreported, 1991 WL 216782 (progressive discipline policy provided that in some cases, some or all of the steps may be bypassed), with *Jackson v. Martin–Brower Co.* (Dec. 26, 1991), Cuyahoga App. No. 59560, unreported, 1991 WL 281020 (company reserved right to discharge without prior warning).

■ Appellant argues that appellee provided no consideration for the company's promise that she could only be terminated according to the policy. Reasonable minds could conclude that in exchange for appellant's promise to abide by the disciplinary policy, appellee opposed unionization and communicated such opposition to the employees under her supervision.

■ Last, appellant argues that there was just cause for the discharge. The issue of just cause is irrelevant to the issue of whether appellee could be discharged without following the procedure.

The trial court did not err in overruling appellant's motion for summary judgment. Accordingly, Assignments of Error I, II, III, IV, and V are overruled.

### Directed Verdict

Appellant requested only a very limited partial transcript. Appellee requested that certain other portions of the transcript be transcribed pursuant to App.R. 9(B). However, the transcript provided to this court does not demonstrate appellant's motion for directed verdict.

Therefore, as error is not demonstrated by the record, Assignments of Error VI, VII, VIII, IX, X, and XI are overruled.

### JNOV—Implied Contract

■ Appellant argues that the court erred in overruling its motion for JNOV on the implied contract claim, for the same reasons as the court erred in overruling the summary judgment motion. Our standard of review is whether there is probative evidence which, if believed, would permit reasonable minds to reach different conclusions as to the essential elements of the case, construed most strongly in favor of the non-movant. *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 539 N.E.2d 1114.

While it is still not clear from the record whether we have received a transcript of all of the testimony before the trial court, we address the assignment of error on the merits, based on the transcript before this court.

Evidence was presented at trial concerning the terms of the corrective action policy and the communicative supervisor manual as discussed under the issue of summary judgment. There was also evidence that supervisors were required to write a recommendation of termination before any action was taken. There was

evidence that the company deviated from the procedure in this case, and prior approval for such deviation was not received. There was evidence that appellee is subject to this policy, although she was told otherwise when she was fired.

Appellee testified that supervisors are required to guarantee to employees that the procedure would be followed, and therefore a union is not necessary.

■ For the reasons discussed under *Summary Judgment*, there was sufficient evidence presented at trial from which the jury could conclude that appellant breached an implied contract that appellee would not be discharged without compliance with the policy.

Assignments of Error XIX, XX, XXI, XXII, and XXIII are overruled.

### *Manifest Weight*

■ A judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at syllabus.

From the evidence outlined above under our discussion of the motion for JNOV, the evidence was sufficient to support the jury's verdict.

Assignments of Error XII, XIII, XIV, XV, and XVI are overruled.

### *Mitigation*

■ Appellant argues that appellee did not act reasonably to mitigate her damages, as she did not seek manufacturing jobs and did not prepare a resume for some period of time following discharge.

There was evidence that appellee applied for employment at numerous places, accepted employment with a cleaning service and at a concession stand, and that a resume was not generally necessary for the type of employment she was seeking. There was evidence that few manufacturing jobs were available in the area, and numerous manufacturing employees were seeking employment due to plant closings.

There was sufficient evidence from which the jury could conclude that appellee reasonably mitigated her damages. Further, given the award of damages in a lesser amount than requested, it is possible that the jury concluded that appellee in part failed to mitigate damages.

Assignments of Error XVII and XXIV are overruled.

*Front–Pay Damages*

Appellant first argues that the court did not properly instruct the jury as to the appropriateness of front-pay damages. As the jury instructions are not included in the transcript, we cannot review this alleged error.

 Appellant next argues that the amount of front-pay damages is against the weight of the evidence, and is speculative. As noted by the trial court in its judgment overruling the motion for JNOV, in light of appellee's age, past efforts and evidence of poor prospects for employment in the future in Richland County, there was substantial evidence to support the award of front pay in the amount of less than two years' wages.

Assignments XVIII and XXV are overruled.

The judgment of the Richland County Common Pleas Court is affirmed.

*Judgment affirmed.*

SMART, P.J., and FARMER, J., concur.

## APPENDIX

*APPELLANT'S ASSIGNMENTS OF ERROR*

I. The trial court erred in overruling appellant's motion for summary judgment on appellee's implied contract claim because appellee failed to produce any evidence to overcome the presumption that she was an at-will employee whose employment could be terminated at any time without reason or notice. ("Order on Summary Judgment Motion," issued October 23, 1991, attached at Tab A)

II. The trial court erred in overruling appellant's motion for summary judgment on appellee's implied contract claim because appellee failed to produce any evidence that appellant ever intended to form a binding contract with appellee by its unilateral issuance of an employee handbook or a corrective action procedure. ("Order on Summary Judgment Motion," issued October 23, 1991, attached at Tab A)

III. The trial court erred in overruling appellant's motion for summary judgment on appellee's implied contract claim because appellant's employee handbook and corrective action procedure did not limit appellant's right to terminate appellee for reasons that were not listed in either document. ("Order on Summary Judgment Motion," issued October 23, 1991, attached at Tab A)

IV. The trial court erred in overruling appellant's motion for summary judgment on appellee's implied contract claim because appellee failed to produce any evidence that appellee provided any bargained-for consideration to appellant in exchange for its alleged promise that appellee's employment would not be

terminated except for specific reasons. ("Order on Summary Judgment Motion," issued October 23, 1991, attached at Tab A)

V. The trial court erred in overruling appellant's motion for summary judgment on appellee's implied contract claim because appellee acknowledged that she removed company property, failed to clock out upon leaving company premises and instructed another employee not to clock out, which constituted proper grounds for termination under appellant's employee handbook and corrective action procedure. ("Order on Summary Judgment Motion," issued October 23, 1991, attached at Tab A)

VI. The trial court erred in overruling appellant's motion for a directed verdict on appellee's implied contract claim because appellee failed to produce any evidence to overcome the presumption that she was an at-will employee whose employment could be terminated at any time without reason or notice. (This ruling was not made in writing by the trial court.)

VII. The trial court erred in overruling appellant's motion for a directed verdict on appellee's implied contract claim because appellee failed to present any evidence that appellant intended its employee handbook or corrective action procedure to constitute a binding promise to appellee that appellee's employment would not be terminated. (This ruling was not made in writing by the trial court.)

VIII. The trial court erred in overruling appellant's motion for a directed verdict on appellee's implied contract claim because appellant's employee handbook and corrective action procedure did not limit appellant's right to terminate appellee for reasons that were not listed in either document. (This ruling was not made in writing by the trial court.)

IX. The trial court erred in overruling appellant's motion for a directed verdict on appellee's implied contract claim because appellee failed to present any evidence that appellee provided any bargained-for consideration to appellant in exchange for its alleged promise that appellee's employment would not be terminated. (This ruling was not made in writing by the trial court.)

X. The trial court erred in overruling appellant's motion for a directed verdict on appellee's implied contract claim because appellee acknowledged that she removed company property, failed to clock out upon leaving company premises and instructed another employee not to clock out, which constituted proper grounds for termination under appellant's employee handbook and corrective action procedure. (This ruling was not made in writing by the trial court.)

XI. The trial court erred in overruling appellant's motion for a directed verdict on appellee's claim for damages under her implied contract claim because appellee failed to present any evidence that she acted reasonably to mitigate her

damages following her termination of employment with appellant. (This ruling was not made in writing by the trial court.)

XII. The trial court erred in granting judgment in favor of appellee's implied contract claim because appellee failed to produce any evidence to overcome the presumption that she was an at-will employee whose employment could be terminated at any time without reason or notice. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XIII. The trial court erred in granting judgment in favor of appellee on her implied contract claim because appellee failed to present to the jury any evidence that appellant intended its employee handbook or corrective action procedure to constitute a binding promise to appellee that appellee's employment would not be terminated. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XIV. The trial court erred in granting judgment in favor of appellee's implied contract claim because appellant's employee handbook and corrective action procedure did not limit appellant's right to terminate appellee for reasons that were not listed in either document. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XV. The trial court erred in granting judgment in favor of appellee on her implied contract claim because appellee failed to present to the jury any evidence that appellee provided any bargained-for consideration to appellant in exchange for its alleged promise that appellee's employment would not be terminated. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XVI. The trial court erred in granting judgment in favor of appellee's implied contract claim because appellee acknowledged that she removed company property, failed to clock out upon leaving company premises and instructed another employee not to clock out, which constituted proper grounds for termination under appellant's employee handbook and corrective action procedure. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XVII. The trial court erred in granting judgment in favor of appellee on her implied contract claim because appellee failed to present to the jury any evidence that she acted reasonably to mitigate her damages following her termination of employment with appellant. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XVIII. The trial court erred in granting judgment in favor of appellee on her implied contract claim when it awarded appellee front pay because such damages

are speculative and not supported by the evidence presented to the jury at trial. ("Judgment Entry; Motion Ruling; Findings of Fact & Conclusions of Law," issued July 8, 1992, attached at Tab B)

XIX. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee's implied contract claim because appellee failed to present to the jury any evidence to overcome the presumption that she was an at-will employee whose employment could be terminated at any time without reason or notice. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)

XX. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee on her implied contract claim because appellee failed to present to the jury any evidence that appellant intended its employee handbook or corrective action procedure to constitute a binding promise to appellee that appellee's employment would not be terminated. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)

XXI. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee's implied contract claim because appellant's employee handbook and corrective action procedure did not limit appellant's right to terminate appellee for reasons that were not listed in either document. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)

XXII. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee on her implied contract claim because appellee failed to present to the jury any evidence that appellee provided any bargained-for consideration to appellant in exchange for its alleged promise that appellee's employment would not be terminated. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)

XXIII. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee's implied contract claim because appellee acknowledged that she removed company property, failed to clock out upon leaving company premises and instructed another employee not to clock out, which constituted proper grounds for termination under appellant's employee handbook and corrective action procedure. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)

XXIV. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee on her implied contract claim because appellee failed to present to the jury any evidence that she acted reasonably to mitigate her damages following her termination of employment

with appellant. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)

XXV. The trial court erred in overruling appellant's motion for judgment notwithstanding the verdict in favor of appellee on her implied contract claim when it awarded appellee front pay because such damages are speculative and not supported by the evidence presented to the jury at trial. ("Judgment Entry Overruling Judgment N.O.V.," issued August 11, 1992, attached at Tab C)